**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WORLD ENTERTAINMENT, INC., and** | : | **CIVIL ACTION** |
| **CARMEN TOMASSETTI,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ANDREA BROWN, GRAND** | : | |
| **ENTERTAINMENT PRODUCTIONS,** | : | **No. 09-5365** |
| **LLC, and JIM DI RENZO,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**Norma L. Shapiro, J.**                                                            **May 20, 2011**

This action was brought by World Entertainment, Inc., ("World Entertainment") and its

CEO/President Carmen Tomassetti ("Tomassetti") against former employees Jim Di Renzo ("Di

Renzo") and Andrea Brown ("Brown"), and her company, Grand Entertainment Productions,

LLC ("Grand Entertainment"). Plaintiffs' 13-count complaint[1] alleged trademark infringement

and unfair competition under the Lanham Act, as well as tortious interference, defamation, unjust

enrichment and breach of contract arising from defendants' departure from plaintiffs' employ.

---

[1] Plaintiffs' complaint alleges: Count I - Trademark Infringement under § 32 of the Lanham Act; Count II - Common Law Trademark Infringement; Count III - Tortious Interference with Contractual Relations; Count IV - Tortious Interference with Business Relations; Count V - Intentional Interference with Prospective Economic Advantage; Count VI - Unfair Competition under § 43A of the Lanham Act; Count VII - Common Law Unfair Competition; Count VIII - Trademark Dilution under § 43(c)of the Lanham Act; Count IX - Trademark Dilution under 54 Pa C.S.A. § 1124; Count X - False Designation of Origin and False Description of Goods under § 43(a) of the Lanham Act; Count XI - False and Defamatory Statements; Count XII - Unjust Enrichment; and Count XIII - Breach of Contract. Di Renzo is named only in Counts IV, V and XII.

1

Jurisdiction over the Lanham Act claims is conferred by 28 U.S.C. § 1331;[2] there is jurisdiction over the pendent state law claims under 28 U.S.C. § 1367(a).[3]

Defendants failed to appear, plead or otherwise defend against plaintiffs' validly served complaint; default judgment was entered against them under Fed. R. Civ. Pro. 55(a) on April 7, 2010. The court held a hearing on damages attended by both parties. Judgment will be entered in favor of plaintiffs for $429,997.30, and an injunction will issue enjoining defendants from use of CTO, plaintiffs' federally registered mark.

I.      **Background**

Plaintiff World Entertainment, based in Radnor, Pennsylvania, is a production company providing music for weddings, Bar/Bat Mitzvahs and corporate events. CEO/President Tomassetti signs musicians to play with bands managed by World Entertainment. All bands managed by World Entertainment have the federally-registered mark CTO in their names, and many contain references to New York City locales.[4] Defendants Brown and Di Renzo, each having entered into a contract with World Entertainment and Tomassetti, were assigned to a band named CTO Tribeca. Brown's contract contained a limited non-compete clause on termination,

---

[2]28 U.S.C. § 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[3]28 U.S.C. § 1367(a) provides: "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

[4]Examples include CTO Grand Central, CTO Soho and CTO Park Avenue.

2

as well as a non-solicitation clause and a clause prohibiting use of the mark CTO or reference to her association with World Entertainment without the company's express written consent.[5]

On January 20, 2008, Brown and Di Renzo entered into their own contract with an existing World Entertainment client.  On September 28, 2008, World Entertainment and Brown agreed to terminate their contractual relationship after Brown performed with CTO Tribeca at events then under contract.  In an email dated September 28, 2008, sent to Tomassetti as well as to several World Entertainment employees, Brown accused Tomassetti of committing a federal crime by accessing and using her personal email account.  Brown then founded Grand Entertainment and a new band featuring former members of CTO Tribeca.  To promote her new venture, Brown released a video featuring CTO Tribeca and the CTO mark over which she superimposed Tribeca Grand - the name of her new band.

Two weeks later, Brown sent a letter to 25 clients under contract with World Entertainment soliciting contracts with her new band.  Plaintiffs' complaint alleges Brown's efforts resulted in the loss of seven clients. Tomassetti made several written demands on Brown to cease using the names CTO and Tribeca in performing, advertising and directing internet searches to Grand Entertainment's website.  These demands had been ignored at the time of the evidentiary hearing to assess damages and equitable relief.  Brown was then unable to produce Grand Entertainment's certificate of incorporation or articles of incorporation.  Despite the court's request, Brown never produced any documentary evidence that Grand Entertainment was a duly incorporated limited liability company.  It appears that Grand Entertainment is a sham corporation, with Brown as its owner.  Under Pennsylvania law, an individual is responsible "for

_____

[5]Di Renzo's contract was not offered in evidence.

3

any liability-creating act performed behind the veil of a sham corporation. Where the court pierces the corporate veil, the owner is liable because the corporation is not a bona fide independent entity, therefore its acts are truly h[ers]." *Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 90 (Pa. 1983). Brown is liable for damages arising from the actions of Grand Entertainment.

## II. Assessment of Damages

The Federal Rules of Civil Procedure allow the court clerk to enter the default of a defendant who fails to plead or otherwise defend. Fed. R. Civ. Pro. 55(a), (b)(2). If there is a default, "the factual allegations of the complaint, except those relating to damages, will be taken as true." *Comdyne I, Inc. v. Corbin, Jr.*, 908 F.2d 1142, 1149 (3d Cir. 1999) (citing 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2688 at 444 (2d ed. 1983)). In the event of a default, plaintiff "may still be required to prove that he or she is entitled to the damages sought." *Comdyne I*, 908 F.2d at 1149. If the claim is not made for a sum certain, the court, in its discretion, may conduct a hearing in connection with the application for default judgment to determine the amount of damages or to establish the truth of any averment by evidence. Fed. R. Civ. Pro. 55(b)(2); *Durant v. Husband*, 28 F.3d 12, 14 (3d Cir. 1994). Proof "in support of damage claims need not conform to a standard of mathematical exactness, but must be reasonably sufficient [that] there is a fair basis for calculation." *Masch v. Chouvalov*, 1997 WL 438473, at * 1 (E.D. Pa. July 24, 1997).

## A. Damages Under the Lanham Act

Plaintiffs' common-law and state statutory trademark claims against defendants Brown and Grand Entertainment are subsumed within their Lanham Act claims. *See Tillery v. Leonard & Sciolla LLP*, 521 F. Supp. 2d 346, 348 n. 1 (E.D. Pa. 2007) ("The test for common law

4

trademark infringement and unfair competition is essentially the same as the test for infringement and unfair competition under the Lanham Act.") (citation omitted); *Mercury Foam Corp. v. L & N Sales & Marketing*, 625 F. Supp. 87, 91 n. 1 (E.D. Pa. 1985) ("Pennsylvania common law [of unfair competition] is identical to the Lanham Act, 15 U.S.C. § 1125, except the Lanham Act requires interstate commerce."). Under the Lanham Act, "when . . . a violation under . . . this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." *See* 15 U.S.C. § 1117(a).

The court's "determination of a damage award is based on considerations of 'equity, reason, and pragmatism.'" *Sweetzel, Inc. v. Hawk Hill Cookies, Inc.*, 1996 WL 355357, at *3 (E.D. Pa. June 19, 1996) (citations omitted). At the damages hearing, plaintiffs offered documentary evidence of a $215,538.08 loss in average annual profits from the four years preceding defendants' departure to the three years following it.[6] Total claimed lost profit for the three year period was $646,614.24. Plaintiffs showed Brown's use of their protected trademarks in advertising and diverting internet traffic to Grand Entertainment's website through search engine phrase matching using Google Adwords and meta tags, but they did not offer any evidence suggesting the percentage of their business downturn caused by such infringement. Plaintiffs' reversal of fortunes coincided with a national recession, so their shrinking profit margins cannot be attributed solely to defendants' trademark infringement. Plaintiffs claim the infringement cost them over $200,000 in net profits annually, but, over the same three-year time

---

[6]For the years 2004-2007, plaintiffs' average annual net profits were $232,182.75. For the years 2008-2010 YTD, plaintiffs' average annual net profits were $16,644.67.

period, Grand Entertainment's net profits were only $176,496.04.

Our Court of Appeals has endorsed a five-factor test to determine whether disgorgement of the defendant's profits is appropriate. *Banjo Buddies, Inc. v. Renofsky*, 399 F.3d 168, 175 (3d Cir. 2005). These factors "include, but are not limited to (1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off." *Id*.

Here, disgorgement is appropriate because of the difficulty of calculating compensation based on plaintiffs' asserted damages. It is unclear what percentage of plaintiffs' lost profits is attributable to defendant's Lanham Act violations; any damages award based on plaintiffs' lost profits would be speculative. It is reasonable and equitable to assume the losses caused by Grand Entertainment did not exceed Grand Entertainment's profits. The court will award plaintiffs disgorgement of defendants' profits in the amount of $176,496.04, for violation of the Lanham Act by Brown and Grand Entertainment.

When the parties' products are in direct competition and the defendant's profits are derived from sales of the same products that account for the plaintiffs' lost profits, the plaintiffs cannot recover both the defendant's profits and their own lost profits. *Darius Int'l, Inc. v. Young*, 2008 WL 1820945, at *53 (E.D. Pa. Apr. 23, 2008) (citing *Century Distilling Co. v. Continental Distilling Corp.*, 205 F.2d 140, 149 (3d Cir. 1953)).

In addition to disgorgement of defendant's profits, plaintiffs are entitled under Section 1117(a) to recover the costs of their action. Plaintiffs will be awarded their documented costs of $18,540.96.

6

The Lanham Act authorizes an award of attorney's fees to a prevailing party in "exceptional" cases. *See* 15 U.S.C. § 1117(a). Exceptional cases involve culpable conduct on the part of the losing party, "such as bad faith, fraud, malice, or knowing infringement." *Securacomm Consulting, Inc. v. Securacom, Inc.*, 224 F.3d 273, 280 (3d Cir. 2000). Plaintiffs' complaint, the factual allegations of which must be accepted as true, alleged defendant Brown was aware plaintiffs owned the trademark "CTO."[7] *See Comdyne I,* 908 F.2d at1149. Brown continued to infringe plaintiffs' trademark after receiving numerous cease and desist letters and the summons in this action. Brown's infringement continued even after the entry of default judgment against her; she was still violating the mark at the time of the damages hearing. This is an "exceptional" case of knowing infringement; plaintiffs will be awarded attorney's fees in the documented amount of $183,959.30. Judgment of disgorgement of profits, costs and attorney's fees will be entered against Brown and Grand Entertainment.

**B.      Common Law Damages**

Plaintiffs' common law claims can be divided into four categories: (1) unjust enrichment; 2) tortious interference; (3) libel; and (4) breach of contract. Since disgorgement of defendant's profits under the Lanham Act will be awarded, any recovery for unjust enrichment would be duplicative. *See Meyer-Chatfield v. Century Bus. Servicing, Inc.*, 732 F. Supp. 2d 514, 523 (E.D. Pa. 2010) ("A party is not permitted to recover twice under multiple theories of law for the same injury.").

---

[7]The complaint excerpts a letter dated October 14, 2008 sent to 25 World Entertainment clients by Brown stating "Carmen Tomassetti [is] the owner of the trademarked name [CTO T]ribeca."

## (ii)     Tortious Interference

Plaintiffs' three counts alleging liability[8] for tortious interference claim damages of $200,000 arising from the loss of seven signed clients as a result of Brown's October 14, 2008 letter. Plaintiffs' complaint states the seven lost clients signed new contracts for performances by Tribeca Grand through Grand Entertainment.[9]  The profits from those contracts are included in Grand Entertainment's 2008 profits disgorged to plaintiffs for violation of the Lanham Act.  Any recovery by plaintiffs for tortious interference would be duplicative of their recovery under the Lanham Act.  *See Meyer-Chatfield*, 732 F. Supp. 2d at 523.

Di Renzo is not a named defendant on the Lanham Act claims, but was named in Counts IV and V of the complaint for tortiously interfering with one of the seven lost contracts.  He is joint and severally liable for the damages resulting from the loss of that contract.  Liability is joint and several when the plaintiff may recover from "one or more of the parties to such liability separately, or all of them together."  *United States v. Gregg*, 226 F.3d 253, 260 (3d Cir. 2000). An assertion of joint and several liability is "an assertion that *each* defendant is liable for the

---

[8]The Pennsylvania Supreme Court recently held the giving of truthful information cannot support a claim for tortious interference with contractual relations. *See Walnut St. Assocs. v. Brokerage Concepts, Inc.*, 2011 WL 1817129, at *8 (Pa. May 13, 2011).  According to the facts alleged in plaintiffs' complaint, defendants' tortious interference was accomplished through falsehoods.  *Brokerage Concepts* has no bearing on the disposition of plaintiffs' tortious interference claims.

[9]Count III alleges Tortious Interference with Contractual Relations against Brown and Grand Entertainment; Count IV alleges Tortious Interference with Business Relations Against Brown, Grand Entertainment and Di Renzo; Count V alleges Intentional Interference with Prospective Economic Advantage against Brown, Grand Entertainment and Di Renzo premised on their inducing a World Entertainment client to break a pre-existing contract with plaintiffs in order to sign a contract with defendants.  It appears from plaintiffs' complaint that Counts IV and V, against Di Renzo, arise from his alleged interference with one of plaintiffs' seven lost clients.

entire amount, although the plaintiff only recovers the entire amount once." *Golden ex rel. Golden v. Golden*, 382 F.3d 348, 555 n. 5 (3d Cir. 2004) (emphasis in original).

Plaintiffs' complaint asserts the loss of seven contracts resulted in $200,000 in damages, or $28,571.43 per contract. While plaintiffs' factual allegations must be taken as true in light of the default judgment entered in their favor, allegations relating to damages must still be proven. *See Comdyne I*, 908 F.2d at 1149. Plaintiffs did not present any evidence at the damages hearing that these seven contracts would have netted $200,000 in profits, or $28,571.43 per performance. In plaintiffs' damages hearing memorandum, they allege CTO Tribeca performed 184 gigs between 2004 and 2007. Plaintiffs' Exhibit 17 states plaintiffs' net profits from CTO Tribeca for those years was $482,557. According to plaintiffs' allegations, CTO Tribeca profits averaged $2,622.59 per contract for the four years prior to defendants' tortious interference with seven contracts. If the seven contracts on which plaintiffs' tortious interference claims are premised would have grossed over ten times the profit normally obtained from a CTO Tribeca performance, there was no proof of this disparity provided at the damages hearing.

Defendant Di Renzo is joint and severally liable to plaintiffs for $3,123.55 under Counts IV and V of the complaint. The figure represents an award of $2,622.59 for the lost contract, plus interest of $500.[10]

**(iii)  Libel**

Plaintiffs' complaint alleges libel against Brown arising from: 1) a September 28, 2008 email sent by Brown to Tomassetti and several World Entertainment employees stating

---

[10]Interest is calculated at the rate of six percent, compounded annually. *See* 41 P.S. § 202; *see also Graveley v. City of Philadelphia*, 1998 WL 47289, at *5 (Feb. 6 1998) ("It is in the discretion of the district court to award prejudgment interest on economic damages.").

Tomassetti "committed a FEDERAL crime by invading [Brown's] email and impersonating [her]"; and 2) a January 23, 2009 email sent by Brown to various World Entertainment employees saying "it's illegal as [sic] immoral for [Tomassetti] to take credit for [someone else's] work." Because Brown's first email accused Tomassetti of a crime, it is *per se* libelous.  *See Joseph v. Scranton Times*, 959 A.2d 322, 344 (Pa. Super. Ct. 2008).  Brown's second email is also *per se* libelous, though it does not accuse Tomassetti of a specific crime.  An accusation of criminality is libel *per se* "although the defamer does not 'charge any particular criminal offense either by name or description, if the words used imply some crime.'" *Clemente v. Espinosa*, 749 F.Supp. 672, 679-80 (E.D. Pa. 1990) (citing Restatement (Second) of Torts § 571 Comment c (1977)).

With words that are actionable *per se*, "only general damages, *i.e.*, proof that one's reputation was actually affected by defamation or that one suffered personal humiliation, or both, must be proven." *Id*.  There is a right to recover punitive damages for libel when knowledge of a statement's falsity or reckless disregard for its truth is proven.  *Sprague v. Walter*, 23 Pa. D. & C. 3d 638, 643 (Pa. Com. Pl. 1982).

At the damages hearing, plaintiff testified to his mental anguish resulting from Brown's emails.  There was also testimony regarding damage to his reputation among his employees and colleagues.  Brown testified that she believed in good faith Tomassetti violated a federal law by contacting World Entertainment clients through her corporate email account.  Because it may be a federal crime to access and use someone else's email account without permission under certain circumstances, Brown's accusations did not recklessly disregard the truth.[11]  Tomassetti will not be awarded punitive damages.

---

[11]*See* 18 U.S.C. § 1030.

Plaintiff cites *Joseph*, 959 A.2d 322, in seeking a high damage award for Brown's libel.  In *Joseph*, the plaintiff was accused of being involved in a money laundering, drug trafficking and prostitution ring in a series of eight libelous newspaper articles .  *Id*. at 329-32.  Here, Brown sent two emails to a small group of World Entertainment employees; the first email had only eight addressees.  While the accusations contained in Brown's emails were humiliating and had the potential to damage Tomassetti's reputation, they were not as serious as accusations of drug trafficking and prostitution and cannot be compared to those in *Joseph*.  Brown sent the offending emails only to World Entertainment employees, so it is difficult to credit Tomassetti's claim, unsupported by evidence, that he lost outside business as a result of their dissemination.  Nonetheless, he clearly suffered mental anguish, and is entitled to $50,000 in compensatory damages.

**(iv)** **Breach of Contract**

Plaintiffs' complaint alleges Brown breached several clauses of her employment contract with World Entertainment, including the non-compete clause.  According to plaintiffs' complaint, the only damages arising from Brown's breach are those resulting from the loss of the seven contracts discussed above.  The lost profits plaintiffs seek to recover were disgorged under their Lanham Act claims; "a party is not permitted to recover twice under multiple theories of law for the same injury."  *Meyer-Chatfield*, 732 F. Supp. 2d at 523.  *See also Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1102 (3d Cir. 1995).

**C.** **Injunctive Relief**

The Lanham Act grants a court the "power to grant injunctions, according to the principles

of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. § 1116(a). A permanent injunction is appropriate under the Lanham Act when plaintiff has shown: (1) irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *See eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

Plaintiffs are entitled to an injunction with regard to the mark "CTO." Plaintiffs will suffer irreparable injury without the imposition of a permanent injunction. Without an injunction, defendants are likely to continue using the CTO mark in advertisements and create a likelihood of confusion. According to our Court of Appeals, "a finding of irreparable injury can be based on a finding of likelihood of confusion." *Shields v. Zuccarini*, 254 F.3d 476, 486 (3d Cir. 2001).

Other remedies at law are inadequate to compensate for plaintiffs' injury, because they will not stop defendants' trademark infringement. *See Louis Vuitton Malletier, S.A. v. Veit*, 211 F. Supp. 2d 567, 585 (E.D. Pa. 2002). Damages from defendants continuing infringement would be difficult to determine. *See A.O. Smith Corp. v. Fed. Trade Comm'n*, 530 F.2d 515, 525 (3d Cir. 1976) ("Irreparable injury is suffered where monetary damages are difficult to ascertain or are inadequate.") (internal citation omitted). Defaulting defendants did not claim any hardships resulting from their inability to use the CTO mark, and the public interest would not be disserved by a permanent injunction. Potential customers would be best served by eliminating dishonest and misleading advertising and solicitation practices by enjoining defendants' use of the CTO mark.

Defendants will be permanently enjoined from using plaintiffs' mark CTO in connection with performing or advertising.

Plaintiffs also seek a permanent injunction enjoining defendants' use of any name that includes the word Tribeca. Brown renamed her band Tribeca Grand when reconstituting it under Grand Entertainment's management. Plaintiffs do not claim to have registered Tribeca as a protected mark, but the Lanham Act "extends protection to unregistered trademarks on the principle that unlicensed use of a designation serving the function of a registered mark constitutes false designation of origin and a false description or representation." *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 296 (3d Cir. 1986). Ordinarily, an arbitrary name "automatically qualifies for trademark protection at least in those geographic and product areas in which the senior user applies it to its goods." *Id.* at 297.

Geographic terms, such as Tribeca, also may be afforded trademark protection when used arbitrarily. *Kraft Gen'l Foods, Inc. v. BC-USA, Inc.*, 840 F. Sup. 344, 349 (E.D. Pa. 1993). *Kraft Foods* suggests three relevant questions to determine whether the use of a geographic term is arbitrary. First, if the mark is not the name of the place or region where the product is produced, it is likely arbitrary. *Id.* Neither CTO Tribeca nor Tribeca Grand originate from the Tribeca neighborhood of Manhattan. Second, a court should determine whether the geographic term was likely to imply to consumers that the term designates from where the named product came. *Id.* The name Tribeca does not suggest the band or its members are from Tribeca. Finally, *Kraft Foods* advises examining whether the place is noted for the particular goods bearing its name. *Id.* Tribeca is not noted for musical bands. Tribeca is entitled to trademark protection as an arbitrary geographic designation, but the balance of the equities weigh against enjoining defendants' use of

the term on its own or as part of their band's name.

The issuance of an injunction against use of Tribeca would impose a far greater hardship on defendants than its non-issuance would impose on plaintiffs. Much of the goodwill associated with the name Tribeca is due to defendants' efforts. According to plaintiffs' complaint, defendants Brown and Di Renzo joined CTO Tribeca in 2002. Brown was designated CTO Tribeca's band leader. By the time defendants left World Entertainment in the Fall of 2008, they had been members of CTO Tribeca for nearly six years, and performed in 184 gigs between 2004 and 2007 alone. Plaintiffs' complaint repeatedly states the importance of reputation in the music entertainment industry; CTO Tribeca's reputation was largely established by the efforts of defendants and other band members, all of whom apparently reformed under the name Tribeca Grand. Stripping those musicians of the goodwill and reputation they have built in the use of Tribeca divorced from the trademark CTO inflicts an undue burden on defendants and their band members, and is not necessary to protect plaintiffs.

An important factor in determining the likelihood of confusion is "the care taken by the consumer in purchasing the product." *Id*. at 350. Bands chosen to perform at important social functions are usually selected with great care. It is true that there are now two bands with the word Tribeca in their names available for engagement in the same geographic region,[12] but consumers can be expected to investigate each band before choosing which to engage. Any confusion caused by defendants' continued use of the term Tribeca in their band's name can be avoided through auditions, interviews and other background checks.

Enjoining defendants' continued use of the registered trademark CTO is sufficient to

_____

[12]At the damages hearing, plaintiffs asserted the formation of a new CTO Tribeca.

prevent defendants from competing unfairly with plaintiffs. Within thirty days of this order,
defendants will file with the court and serve on plaintiffs a report in writing under oath setting forth
in detail the manner and form in which they have complied with this injunction. *See* 15 U.S.C. §
1116(a).

## III.    Conclusion

The court will enter judgment against defendants Brown and Grand Entertainment
calculated as follows:

| | | |
|---|---|---|
| 1. | Lanham Act Damages | $ 176,496.04 |
| 2. | Costs | $  18,540.96 |
| 3. | Attorney's Fees | $ 184,959.30 |
| 4. | Libel (compensatory & punitive) | $  50,001.00 |
| | Total: | $ 429,997.30 |

Defendant Di Renzo is joint and severally liable in the amount of $3,123.55. Defendants
will be enjoined from using the mark CTO in performances and advertisements.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WORLD ENTERTAINMENT, INC., and** | : | **CIVIL ACTION** |
| **CARMEN TOMASSETTI,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ANDREA BROWN, GRAND** | : | |
| **ENTERTAINMENT PRODUCTIONS,** | : | **No. 09-5365** |
| **LLC, and JIM DI RENZO,** | : | |
| **Defendants.** | : | |

## JUDGMENT ORDER

AND NOW, this 20th day of May, 2011, following a damages hearing at which both parties were heard, for the reasons stated in the accompanying memorandum, it is hereby **ORDERED** that:

1.    Judgment is **ENTERED** in favor of the plaintiffs World Entertainment and Carmen Tomassetti and against defendants Brown and Grand Entertainment in the amount of $429,997.30;

2.    Defendant Di Renzo is joint and severally liable under Counts IV and V of the complaint in the amount of $3,123.55

/s/ Norma L. Shapiro
_____
                                                    J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WORLD ENTERTAINMENT, INC., and** | : | **CIVIL ACTION** |
| **CARMEN TOMASSETTI,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ANDREA BROWN, GRAND** | : | |
| **ENTERTAINMENT PRODUCTIONS,** | : | **No. 09-5365** |
| **LLC, and JIM DI RENZO,** | : | |
| **Defendants.** | : | |

## INJUNCTION

AND NOW, this 20th day May, 2011, following a damages hearing at which both parties were heard, for the reasons stated in the accompanying memorandum, a permanent injunction against defendants and in favor of plaintiffs is **GRANTED**, and it is **ORDERED** that:

1.    Defendants Brown, Grand Entertainment and Di Renzo, their respective associates, agents, servants, employees, officers, directors, representatives, successors, assigns and attorneys and all persons in active concert or participation with them, are enjoined and restrained from:

    (a)    representing by words or act, or by failure to act, that the performances and products, related services advertised, promoted, offered for sale, sold or distributed by defendants are affiliated, associated, authorized, sponsored, or endorsed by, or otherwise connected with plaintiffs, including, but not limited to, usage of the trademark CTO in any band name;

    (b)    using, publishing or causing the use or publication of any signs, stationery,

slogans, internet domain names, website meta tags, advertisements, business cards, promotional publications, uniforms, designs, logos, forms or other printed or electronic matter or materials which use or display plaintiffs' CTO trademark, or colorable imitations or abbreviations thereof or any other confusingly similar term;

(c)     making any statements or representation or acting in any manner which is likely to lead the public or individual members of the public to believe that any defendant is in any manner directly or indirectly associated with, or licensed, authorized, or approved by or on behalf of plaintiffs, or to believe that any products or services offered for sale by any defendant is associated with plaintiffs or is being offered by plaintiffs;

(d)     using, in any market in connection with the music industry, as a trade name or as the name of a corporation or any business entity, any name that includes plaintiffs' trademark "CTO" or "cto," or any colorable imitations thereof, or any other confusingly similar term, and ordering defendants to cancel with all applicable and appropriate governmental agencies any corporate name, fictitious or trademark or service mark registration that includes either the word "CTO" or "cto," or colorable imitations thereof or any other confusingly similar term;

(e)     committing any act that infringes plaintiffs' service marks or trade name or which constitutes unfair competition against plaintiffs or which constitutes a violation of 15 U.S.C. § 1125(a);

(f)     any other conduct that causes, or is likely to cause, confusion, mistake, deception or misunderstanding as to the source affiliation, connection or association of defendants' products and related services;

(g)     purchasing or using any form of advertising, including use of keywords or meta tags in internet advertising containing plaintiffs' CTO trademark, or any mark incorporating plaintiffs' CTO trademark, colorable imitations thereof or any confusingly similar mark; and

(h)     otherwise unfairly competing with plaintiffs in any manner.

2.     Defendants shall file with this court and serve on plaintiffs, by **Monday, June 20, 2011**, a report in writing under oath setting forth in detail the manner and form in which defendants have complied with this permanent injunction;

3.     Pursuant to 15 U.S.C. § 1118, defendants shall, by **Monday, May 30, 2011**, deliver up to plaintiffs for destruction all stationery, business cards, invoices, forms, advertisements, promotional materials, signs or any other materials bearing marks or symbols that infringe on plaintiffs' registered trademark, CTO.

/s/ Norma L. Shapiro
_____
J.